IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAWN AND ANN TSCHANZ,

                                   OPINION AND ORDER

        Plaintiffs,

                                    19-cv-896-bbc

      v.

WPPI ENERGY, AMERICAN TRANSMISSION
COMPANY, LLC, NORTHERN STATES POWER
COMPANY, SMMPA WISCONSIN LLC, DAIRYLAND
POWER COOPERATIVE and ATC MANAGEMENT, INC.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this civil action for monetary and declaratory relief brought under 42 U.S.C. § 1983 and Wisconsin state law, plaintiffs Shawn and Ann Tschanz contend that various utility companies vested with Wisconsin's power of eminent domain overburdened an existing easement by constructing an electric transmission line on their property, in violation of the due process, equal protection and takings clauses of the Fifth and Fourteenth Amendments and state condemnation and trespass law.  Before the court is defendants' motion to dismiss plaintiff's due process and equal protection claims under Fed. R. Civ. P. 12(b)(6).  Dkt. #15.  For the reasons set out below, I am granting defendants' motion to dismiss plaintiffs' procedural and substantive due process claims but denying their motion to dismiss plaintiffs' equal protection claim.

        Plaintiffs allege the following facts in their complaint.

1

ALLEGATIONS OF FACT

Plaintiffs Shawn and Ann Tschanz reside and own property in Taylor, Wisconsin, which is located in Jackson County. Defendant WPPI Energy has its primary office in Sun Prairie, Wisconsin, and is a municipal joint action agency organized as a municipal electric company under Wis. Stat. § 66.073. Defendants American Transmission Company, LLC and ATC Management, Inc. are located in Waukesha, Wisconsin and jointly form a public utility under Wis. Stat. § 196.01(5) and a transmission company under Wis. Stat. § 196.485(1)(i). Defendant Northern States Power Company is a Wisconsin corporation and vertically-integrated public utility that provides electric generation, transmission and distribution services in Western Wisconsin and the Upper Peninsula of Michigan. Defendant SMMPA Wisconsin LLC is a Wisconsin corporation with its primary address in Rochester, Minnesota. It is a subsidiary of the Southern Minnesota Municipal Utilities Agency and was formed to own electric transmission in Wisconsin. Defendant Dairyland Power Cooperative is an electric generation and transmission cooperative headquartered in La Crosse, Wisconsin.

In 1968, defendant Northern States acquired an easement on property that plaintiffs have owned during all periods relevant to their complaint. The easement was recorded on March 1, 1968, and allows the easement holder to construct, operate and maintain an electric transmission line on the property; to enter the property to survey, construct, operate, control, maintain and use the transmission line; and to rebuild the transmission line, provided no substantial alterations are made that "materially increase the burden of the

2

servitude hereby imposed on the land."  Dkt. #2-1 at 2.  Also in 1968, Northern States acquired a substantially similar easement on a neighboring property.  Both easements were created using the same Northern States form titled "CENTERLINE EASEMENT FORM 130-E-59 (l-54)."  In or around 1968, a 161 kilovolt electric transmission line was constructed and strung from 80-foot tall H-frame structures on plaintiffs' property and the neighboring property.

On April 23, 2015, the Public Service Commission of Wisconsin granted a Certificate of Public Convenience and Necessity approving construction of a new 345 kV transmission line known as the "Badger Coulee Transmission Line" by a group of entities that includes defendants.  Because the new line would potentially cross plaintiffs' property, the commission ordered the line to be strung on monopoles, or as a contingency, to be constructed at an alternative location not on plaintiffs' property.  In the event that the line was constructed across plaintiffs' property, the commission ordered the existing 161 kV transmission line to be "double circuited" with the new transmission line, the incorporation of monopoles and the removal of the existing H-frame transmission poles.

In a certified letter dated January 24, 2017, defendants' agent notified plaintiffs of the Badger Coulee Project and proposed a new transmission line easement granting rights to defendants.  Defendants suggested that the proposed new easement was part of a process of which plaintiffs already had been notified.  (Plaintiffs do not say whether they had received prior notice, but I presume that they had not.)  The letter notified plaintiffs of the statutory and administrative requirements related to the acquisition of property under the

3

power of eminent domain, Wis. Stat. § 32.06, including the provision that plaintiffs were entitled to two appraisals addressing the easement rights affecting their property and a second provision advising plaintiffs that they had the right to appeal for additional compensation.   Section 32.06(2a), which is titled "Agreed Price," sets forth certain requirements that condemnors exercising eminent domain power (in this case, the defendant utilities) have to meet when exercising eminent domain power in the context of attempting to acquire property through negotiation.

The proposed new easement that defendants outlined for plaintiffs included the property rights contained in Wis. Stat. § 182.017(7) for easements for high-voltage transmission lines.  It specified that the new double-circuited transmission facility would be 156 feet tall and routed across plaintiffs' property along the same centerline as the existing H-frame poles supporting the one-line facility.  The exact location of the monopoles was an issue for discussion among the parties because the United States Fish and Wildlife Service also holds an easement as to plaintiffs' property and had expressed an interest in the matter. Although a meeting between the parties and the Fish and Wildlife Service had been scheduled for July 24, 2017, defendants notified plaintiffs in a letter dated July 21, 2017 that they had decided not to acquire a new easement with respect to plaintiffs' property for the Badger Coulee project.  (The letter did not provide a reason for defendants' withdrawal of the offer of an easement.   Dkt. #2-3.)   Rather, defendants asked plaintiffs to accommodate the two-line facility without any new easement or compensation and to waive any claims for trespass or inverse condemnation under state law.

In the meantime, defendants paid for and acquired from plaintiffs' neighbors a new easement that is almost identical to the easement that defendants had proposed to plaintiffs but ultimately did not offer to them.  Plaintiffs repeatedly asked defendants to complete the easement acquisition process that they had initiated so that, like their neighbors, could receive just compensation and property rights identified in Wis. Stat. § 182.017(7). Defendants refused, and no agreement was reached with respect to the new two-line facility construction on plaintiffs' property.

On August 30, 2017, plaintiffs' lawyer, Mark Radcliffe, sent an email to defendants' attorney, stating that construction of the two-line facility would overburden the 1968 easement.  On October 31, 2017, defendants' contractor laid wooden mats on a portion of plaintiffs' property to enable heavy construction equipment to traverse the property.  The contractor left the property after plaintiffs called the sheriff's department.  On December 1, 2017, defendants' contractor returned to the property and laid additional heavy wooden mats.  Defendants then completed construction of the two-line facility, which they continue to maintain and operate.

The two-line facility altered and increased the burden on plaintiffs' property by adding much taller poles and three additional electrical conductors and creating construction and other hazards and nuisances not associated with the former one-line facility on H-frame poles.   A professional appraisal contracted on behalf of defendants confirms that construction and maintenance of the two-line facility "measurably reduces" the value of plaintiffs' property.

5

OPINION

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." <u>Richards v. Mitcheff</u>, 696 F.3d 635, 637 (7th Cir. 2012).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must comply with Rule 8(a)(2) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" that gives defendants "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (complaint must allege sufficient facts to state claim to relief that is "plausible on its face").  When considering a motion to dismiss for failure to state a claim, a court must accept as true the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  <u>Alam v. Miller Brewing Co.</u>, 709 F.3d 662, 665-66 (7th Cir. 2013); <u>Yeksigian v. Nappi</u>, 900 F.2d 101, 102 (7th Cir. 1990).

Plaintiffs contend that defendants' actions constituted an unconstitutional taking and violated Wisconsin state statutes and their constitutional rights to equal protection and procedural and substantive due process.  Defendants maintain that plaintiffs have failed to state either an equal protection or due process claim.  I will address each of defendants' challenges separately.

A.  <u>Equal Protection</u>

The Fourteenth Amendment's equal protection clause "secure[s] every person within

the State's jurisdiction against intentional and arbitrary discrimination." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam) (quoting <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441, 445 (1923)).  Plaintiffs contend that defendants singled them out and treated them differently from neighboring land owners by overburdening their 1968 easement and refusing to negotiate and pay for a new easement. To proceed on this type of "class-of-one" theory under the equal protection clause, plaintiffs must allege at a minimum that:  (1) defendants have treated them differently from others similarly situated; and (2) defendants had no rational basis for the difference in treatment. <u>Fares Pawn, LLC v. Indiana Department of Financial Institutions</u>, 755 F.3d 839, 845 (7th Cir. 2014); <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 370-71 (7th Cir. 2000) ("[B]ona fide equal protection claims arising from land-use decisions can be made independently from a takings claim" in cases in which the governmental action is "'wholly impossible to relate to legitimate governmental objectives.'").  "What is less clear is whether a class-of-one plaintiff must also allege, and ultimately prove, that the government officials acted with some kind of bad motive not grounded in their public duties." <u>Fares Pawn</u>, 755 F.3d at 845 (explaining that "[i]n <u>Del Marcelle v. Brown County Corp.</u>, 680 F.3d 887 (7th Cir. 2012) (en banc), this court divided over that question, leaving no controlling opinion").

Defendants argue that plaintiffs cannot state a class-of-one equal protection claim because there "are many possible explanations" for why they treated plaintiffs differently from their neighbors.  <u>Miller v. City of Mofronona</u>, 784 F.3d 1113, 1121-22 (7th Cir. 2015) ("[I]t is possible for plaintiffs to plead themselves out of court if their complaint reveals a

7

potential rational basis for the actions of local officials.").  They also cite Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), for the view that land use decisions involving discretionary, multi-factor decision-making are not appropriate targets for an equal protection challenge.  In Engquist, the Supreme Court held that certain forms of state action "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," and in those situations, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted," and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise."  Id. at 603.  See also Miller, 784 F.3d at 1119-20 (citing same and concluding that "even if we disagree with a land-use decision made by local officials, there is no class-of-one claim unless the plaintiff is able to show that there was no rational basis for the officials' actions").

Plaintiffs' allegations do not reveal an obvious rational basis for defendants' decision, and defendants do not identify one.  Rather, defendants argue generally that "[i]t would not be surprising or irrational to have different outcomes based on the uniqueness of each property, the location of the properties, prior easements on the properties, or the location of the transmission line on the properties."  Dkt. #16 at 7.  Defendants seem to fault plaintiffs for not alleging more specific information about the similarities between the two properties, but they were not required to identify specific examples of similarly-situated

individuals in their complaint. <u>Miller</u>, 784 F.3d at 1120; <u>Geinosky v. City of Chicago</u>, 675 F.3d 743, 748 n.3 (7th Cir. 2012). In any event, plaintiffs allege that the two properties had been subject to almost identical easements since 1968 and were similarly affected by defendants' two-line facility.

Defendants point out that plaintiffs' property was subject to an easement held by the United States Fish and Wildlife Service and contend that emails attached to plaintiffs' complaint show that this easement prevented defendants from obtaining the new easement for the two-line facility. However, contrary to defendants' assertion, it is not clear from the allegations in the complaint or the emails attached as exhibits to it that defendants were unable to acquire a new easement on plaintiffs' property because the United States Fish and Wildlife Service also held an easement as to the property. (Because the emails are not part of plaintiffs' pleading, I did not summarize their contents in the alleged facts, but the only reference to the federal agency is plaintiffs' counsel's unexplained statement that "US Fish & Wildlife was lead to believe that the Tschanzs were OK with all this, which is not true." Dkt. #2, exhibit ##5-6.)

The facts surrounding the federal government's easement will have to be sorted out at a later stage, making this another potential difference between plaintiffs' property and the neighbors' property. However, defendants have not suggested why it was rational for them to base their actions on that difference and nothing in plaintiff's pleadings shows why it would have been. <u>Ghiles v. Muncipal Electoral Board and Commissioners of Chicago Heights, Illinois</u>, 2020 WL 919002, at *11 (N.D. Ill. Feb. 26, 2020) (noting similar problem

9

on motion to dismiss class-of-one equal protection claim).  Because the allegations in the complaint do not make clear how the federal easement may have affected defendants' decision-making, I conclude that plaintiffs have not pleaded themselves out of court.  Cf. Miller, 784 F.3d at 1122-23 (finding that plaintiff pleaded herself out of court by alleging the city's stated reasons for stop work orders).

### B.  Procedural Due Process

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law."  Mann v. Vogel, 707 F.3d 872, 877 (7th Cir. 2013) (quotation omitted).  A procedural due process claim under § 1983 requires that the plaintiff allege deprivation of a protected interest and insufficient procedural protections surrounding that deprivation.  Cannici v. Village of Melrose Park, 885 F.3d 476, 479 (7th Cir. 2018).  Procedural due process generally requires only "notice and an opportunity to be heard."  Dusenbery v. United States, 534 U.S. 161, 167 (2002).

Plaintiffs allege that defendants' construction of the two-line facility overburdened their 1968 easement and deprived them of their property without notice or an opportunity to be heard.  They further allege that defendants acted unfairly and deliberately in denying them a new easement for which they would receive compensation under state statutes.  However, defendants contend that plaintiffs cannot state a procedural due process claim because they have an adequate post-deprivation remedy under Wis. Stat. § 32.10, which provides them with an opportunity to be heard and obtain compensation for any illegal

taking.

"In order to prevail on a procedural due process claim, [] property owner[s] must show that [they were] deprived of a full and fair hearing to adjudicate [their] rights," Bettendorf v. St. Croix County, 631 F.3d 421, 427 (7th Cir. 2011), or that they were deprived of property because of the "intentional but 'random and unauthorized' conduct by an employee," Doherty v. City of Chicago, 75 F.3d 318, 323 (7th Cir. 1996), amended (Mar. 28, 1996).  See also Leavell v. Illinois Department of Natural Resources, 600 F.3d 798, 804 (7th Cir. 2010) (discussing distinction between claims based on established state procedures and claims based on random, unauthorized acts by state employees).  In cases in which the conduct in question is random and unauthorized, procedural due process requirements are satisfied if the state provides a meaningful post-deprivation remedy. Leavell, 600 F.3d at 805 (quotation omitted).  Although defendants disagree, plaintiffs make clear that they believe that defendants' conduct was not random or unauthorized.  If that is the case, plaintiffs must allege sufficient facts to suggest that there was no notice and hearing or that the process provided to them was constitutionally inadequate.  Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.").  With respect to eminent domain, at least in a zoning context, the Court of Appeals for the Seventh Circuit has explained that "the procedures 'due' . . . are minimal," and individuals "contending that state or local regulation of the use of land has gone overboard must repair to state court."

River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166, 167 (7th Cir. 1994).  See also Gosnell v. City of Troy, Illinois, 59 F.3d 654, 658 (7th Cir. 1995) (citing same and holding that "opportunity to litigate in state court after the fact supplies all the process due for claims of inverse condemnation by excessive regulation").

In this case, plaintiffs allege that they received a letter notifying them of defendants' proposed new transmission line easement and their rights and recourse under Wis. Stat. §§ 32.06 and 182.017(7).  Plaintiffs allege that the letter seemed to assume that they already had been notified of the acquisition process, but they also allege that they received the notice in advance of defendants' entry onto their property.  The fact that negotiations broke down and defendants made no payment to plaintiffs does not mean that the procedural scheme was constitutionally inadequate.  Plaintiffs had, and still have, the option of seeking administrative review of defendants' decision and actions.  Gentlemen Gaming, LTD v. City of E. Peoria, 2019 WL 7116096, at *2-3 (C.D. Ill. Dec. 23, 2019) (finding same and citing Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.")).  For example, plaintiffs allege that defendants informed them of their rights under Wis. Stat. § 32.06 with respect to proposed easements, negotiating an agreed price and contesting defendants' rights of condemnation. Although plaintiffs believe that they were treated unfairly because defendants decided not to acquire a new easement, their arguments relate to whether defendants reached the correct decision and not whether the notice they received or the statutory procedures available to

them to challenge defendant's decision were constitutionally adequate.

Plaintiffs also cite in <u>Knick v. Township of Scott</u>, ___ U.S. ___, 139 S.Ct. 2162, 2170 (2019), in which the United States Supreme Court held that landowners can now proceed directly to federal court for violations of the takings clause without first exhausting their remedies in state court.  <u>Id.</u> ("The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner.").   Previously, a landowner was required to exhaust all state administrative remedies—including state condemnation statutes like Wis. Stat. Ch. 32—before filing suit in federal court.  <u>Id.</u> at 2167.  However, as defendants point out, <u>Knick</u> did not address the due process clause or hold that state condemnation statutes violate landowners' rights to due process.  <u>Bruzga v. County of Boulder</u>, 795 Fed. App'x 599, 603 (10th Cir. 2020) (quoting <u>Knick</u>, 139 S.Ct. at 2172) ("The right discussed in <u>Knick</u> is 'the irrevocable right to just compensation immediately upon a taking . . . by which the landowner has already suffered a constitutional violation' irrespective of the availability of a subsequent compensation remedy, whereas a procedural due process violation does not occur until or unless the plaintiff has been deprived of adequate process.").

In sum, because plaintiffs' allegations suggest that they had adequate notice of the construction of the two-line facility and an opportunity to be heard, I find that plaintiffs have failed to state a procedural due process claim.

C.  Substantive Due Process

"Successful constitutional challenges to state and local land-use decisions generally rely on the takings clause of the Fifth Amendment (as incorporated by the Fourteenth) or the equal protection clause of the Fourteenth Amendment." CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 487 (7th Cir. 2014).  However, "the Supreme Court has acknowledged at least the theoretical possibility that a land-use decision—if it was 'arbitrary in the constitutional sense' and deprived the plaintiff of property—could constitute a deprivation of property without substantive due process of law." Id. (quoting City of Cuyahoga Falls v. Buckeye Community Hope Foundation, 538 U.S. 188, 198-99 (2003)).

To state a substantive due process claim under the Fourteenth Amendment, plaintiffs must allege an "abuse of governmental power so arbitrary and oppressive that it shocks the conscience." Catinella v. County of Cook, Illinois, 881 F.3d 514, 519 (7th Cir. 2018). See also CEnergy-Glenmore, 769 F.3d at 487 (to run afoul of Constitution, land-use decisions must "shock the conscience," be arbitrary and capricious or random and irrational).  In addition, the Supreme Court has repeatedly cautioned courts against expanding the contours of substantive due process, limiting it to only the most egregious official conduct.  Catinella, 881 F.3d at 518 (citing Sacramento County v. Lewis, 523 U.S. 833, 842, 846 (1998)).  For example, the Supreme Court's lodestar case recognizing a conscience-shocking due-process violation involved the forcible pumping of a criminal suspect's stomach, which the Court described as "bound to offend even hardened sensibilities." Id. (citing Rochin v. California,

342 U.S. 165, 172-173 (1952)).  By contrast, in <u>Lewis</u>, the Supreme Court held that a sheriff's deputy did not violate this standard "by causing death through deliberate or reckless indifference to life in a high speed automobile chase aimed at apprehending a suspected offender."  <u>Lewis</u>, 523 U.S. at 846.

Defendants argue that their acquisition of an easement on some properties but not others is not so arbitrary and oppressive that it shocks the conscience.  I agree.  (Because I am denying plaintiffs' claims on this ground, I have not considered defendants' additional argument that plaintiffs cannot bring a substantive due process claim without first exhausting their state law remedies or showing that they are inadequate.)   Plaintiffs' allegations that defendants intentionally abandoned their attempts to negotiate a new proposed easement do not suggest that defendants acted egregiously or even in a manner that is uncommon in typical land or zoning disputes.  <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 286 (3d Cir. 2004) (finding same in case in which officials allegedly applied subdivision requirements to plaintiffs' property but not other parcels, pursued unannounced and unnecessary inspection and enforcement actions, delayed certain permits and approvals, improperly increased tax assessments and "maligned and muzzled" plaintiffs).  <u>See also</u> <u>Bettendorf</u>, 631 F.3d at 426 ("The County's decision to revoke the commercial designation can hardly be considered conscious-shocking or arbitrary.").  For example, plaintiffs have not alleged bribery, corruption or other shocking behavior on the part of defendants. <u>CEnergy-Glenmore</u>, 2013 WL 3354511, at *5 (noting same in case in which town accused of unreasonably delaying issuance of building permits needed to construct wind turbines).

Accordingly, plaintiffs' substantive due process claim will be dismissed.


ORDER

IT IS ORDERED that the motion to dismiss filed by defendants WPPI Energy, American Transmission Company, LLC, Northern States Power Company, SMMPA Wisconsin LLC, Dairyland Power Cooperative and ATC Management, Inc., dkt. #15, is GRANTED with respect to plaintiffs' procedural and substantive due process claims, which are DISMISSED. Defendants' motion is DENIED in all other respects.

Entered this 4th day of May,

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

16